*810
 
 MORRIS, Judge.
 

 Joseph Sullivan, as personal representative of the estate of Sammy Sullivan (the Estate), appeals a final judgment entered in favor of Mark David Kanarek, M.D., and Nadal Pediatrics, P.A., the defendants in a medical malpractice action. The Estate specifically challenges a successor judge’s denial of its motion for new trial. The issue in this appeal is whether the successor judge was in a position to fairly consider the Estate’s motion for new trial based on the totality of both record and alleged nonrecord improprieties of defense counsel. The improprieties were so pervasive in the opinion of the presiding trial judge that she verbalized her concerns on the record, resulting in defense counsel’s successful recusal of her before she could rule on the motion for new trial. We conclude that under the extraordinary circumstances of this case, the successor judge should have granted the motion for new trial.
 

 The facts of this case involve the tragic circumstances surrounding the death of a twenty-three-month-old baby boy. The child’s death was caused by an invasive, flesh-eating, group A streptococcus bacterial infection forty-eight hours after he was diagnosed by Dr. Kanarek as having only a viral cold or flu. The Estate’s claim at trial was that the child could have been successfully treated with antibiotics if the child had been correctly diagnosed when he was seen by Dr. Kanarek. The defense’s position was that the child did not yet have the deadly infection, which is extremely fast acting, when he was seen by Dr. Kanarek and that Dr. Kanarek was therefore not negligent in his treatment of the child.
 

 The trial transcript reflects a highly contentious and raucous five-day jury trial, fraught with objections and bench conferences. On two occasions, the trial judge cleared the courtroom due to the inappropriate conduct of the attorneys, at which time the trial judge held private, off-the-record discussions with the attorneys.
 

 After the jury returned its verdict finding no liability on the part of the defense, the Estate moved for a new trial, arguing that the totality of defense counsel’s tactics and behavior deprived the Estate of a fair trial. The alleged improprieties consisted of verbal behavior that is reflected in the record as well as nonverbal behavior that is not reflected in the record but which occurred in the presence of the jury. During the course of the trial, the Estate never moved for a mistrial.
 
 [1]
 
 Instead, on several occasions when the court sustained the Estate’s repeated objections regarding defense counsel’s inappropriate behavior, the Estate specifically stated that it was not moving for a mistrial.
 

 Several weeks after the trial, at the conclusion of the initial hearing on the Estate’s motion for new trial, the presiding judge made the following statements on the record:
 

 The trial was extraordinary in that I cleared the courtroom twice. Come February of next year, I will have been on the bench 20 years.... I[ ] have been a member of the bar since June, 1976. Even as a prosecutor, even in conversations with my colleagues, I can’t think of running into a scenario where because of
 
 *811
 
 the conduct, not of the litigants, not of the litigants, but the conduct of counsel — and to be clear, it was Mr. Jose-pher’s conduct, that ha[s] risen to the level of causing me grave concern as to the fairness of this trial....
 

 Again, this trial was extraordinary, not because it was a medical mal, not because unfortunately, it was a baby that died. It was extraordinary because of the amount of time that was dedicated to managing the defense’s behavior....
 

 The trial judge further asserted that what happened during the course of the trial could not be gleaned from the cold record in this case. Because the Estate had just filed a memorandum in response to one filed by the defense, the trial judge offered the defense an opportunity to file a “further written reply” to the Estate’s memorandum. The trial judge stated at the end of the hearing that she would “go back and review [her] notes in light of [the parties’] legal arguments,” particularly the defense’s argument that the Estate waived its motion for new trial by failing to move for a mistrial during trial. Three days later and before the trial judge ruled on the motion for new trial, the defense filed a motion to disqualify the trial judge based on her comments at the hearing on the motion for new trial. Upon finding that the motion to disqualify was legally sufficient, irrespective of its merits, the trial judge granted the motion.
 

 Because the presiding trial judge had witnessed firsthand the alleged inappropriate conduct of counsel during the course of trial, much of which was alleged to be outside the scope of the transcribed record, the Estate attempted to take the deposition of the trial judge for the benefit of the successor judge who would rule on the motion for the new trial. The defense moved for a protective order, which was granted by the first successor judge.
 

 The first successor judge then recused herself before ruling on the motion for new trial, and the case was reassigned to a second successor judge. Before the second successor judge ruled on the motion for new trial, she was rotated to another division and the case was assigned to yet a third successor judge. The third and final successor judge held a hearing on the motion for new trial and stated the following:
 

 Well, I am going to have to rule on this, but I think there is no debate [regarding] the difficulty a successor judge has in making these assessments of what went on during a trial.
 

 I think you all agree that is hard to do based — even if I had the whole transcript in front of me of this trial, it would be hard to do. But I — I have no choice, given the fact that I am [the] current judge on this case.
 

 But I just — I think it is very difficult for any successor judge to make the kind of assessments that need to be made about what impact on a jury certain behavior has. Very difficult for me to do. And I think when a judge is disqualified^] ... it ... put[s] a successor judge in a difficult position on properly assessing the merits of a motion for a new trial. But there is no choice here given the fact of the disqualification.
 

 [[Image here]]
 

 fflt’s not like an appellate court. The appellate court has — I agree with you there are issues that a trial judge addresses that are standards that are also addressed by the appellate court, but they are doing two different things.
 

 The 2nd DCA is not doing the same thing that [the presiding judge] would have been doing in a motion for new trial, having observed — and I am not suggesting — I don’t know what [the presiding judge] would have done. But there is no doubt in my mind that she
 
 *812
 
 would have been in a better position than I am to address this motion.
 

 The successor judge also contemplated, without any apparent resolution, what weight should be given to the fact that the presiding judge was not available to rule on the motion due to defense counsel’s motion to disqualify her, which the presiding judge was required to grant based on its legal sufficiency without regard to its merits. The successor judge expressed on the record his concern that defense counsel’s tactic gave the defense an unfair advantage by frustrating the court’s fair consideration of the motion for new trial.
 

 After the hearing, the successor judge entered an order denying the Estate’s motion for new trial. It is not clear from the record of the hearing or the order of denial whether the successor judge reviewed the entire trial transcript before denying the motion.
 

 On appeal, the Estate argues that the successor judge erred in denying its motion for new trial when the prejudice caused by the totality of defense counsel’s conduct denied the Estate a fair trial and when such totality and prejudice could not be gleaned from a review of the cold record in this case.
 

 Trial judges are given broad discretion in ruling on a motion for a new trial.
 
 Cloud v. Fallis,
 
 110 So.2d 669, 673 (Fla.1959). Where the totality of the misconduct of counsel is so pervasive as to raise doubts as to the overall fairness of the trial proceedings, a new trial may be necessary.
 
 Manhardt v. Tamton,
 
 832 So.2d 129, 132 (Fla. 2d DCA 2002).
 

 Here, the successor judge who ruled on the motion for new trial was not the trial judge who observed the alleged misconduct of defense counsel that was purportedly so pervasive as to call the fairness of the trial into serious question. In a civil case, when unusual circumstances — such as death or an involuntary recusal — render the presiding trial judge completely unavailable to hear a motion for new trial, a successor judge should l-eview the entire trial court record and rule on the motion to the best of his or her ability.
 
 See Nat'l Healthcorp Ltd. P’ship v. Cascio,
 
 725 So.2d 1190, 1193-94 (Fla. 2d DCA 1998). If, after reviewing the entire record, the successor judge determines that a particular credibility issue exists which prevents the trial court from adequately ruling on the merits of the motion for new trial, the successor judge may grant the motion and explain in a written order the specific circumstances justifying the new trial, without ruling on the merits of the new trial.
 
 Id.
 
 at 1194 (citing Fla. R. Civ. P. 1.530(f)).
 

 In this case, the successor judge who ultimately ruled on the motion for new trial openly expressed concern that the presiding trial judge, not he, was in the best position to address the motion for new trial given that the motion was based on defense counsel’s conduct during the entire course of the trial, much of which was alleged to be outside the scope of the transcribed record. His concern was underscored by the fact that the presiding trial judge had already openly expressed grave concern for the fairness of the trial given the totality of defense counsel’s behavior, which the presiding trial judge believed would not be adequately reflected in the record.
 

 While it is well established that a successor judge may rule on a motion for new trial, a successor judge’s ruling is afforded less deference on appeal than that of a presiding judge.
 
 See Cascio,
 
 725 So.2d at 1193 (citing
 
 Wolkowsky v. Goodkind,
 
 153 Fla. 267, 14 So.2d 398, 402 (1943), and
 
 Wohlfiel v. Morris,
 
 122 So.2d 235, 236-37 (Fla. 2d DCA 1960)). This is
 
 *813
 
 because a presiding trial judge is in a much better position to make such a ruling given that the presiding trial judge witnessed the trial firsthand. In fact, a successor judge is in no better a position than the appellate court to make such a ruling.
 
 See Peterson v. Peterson,
 
 929 So.2d 38, 39 (Fla. 4th DCA 2006). This court has recognized that a successor judge may be required to grant a new trial as a matter of law when the successor judge did not observe factors, such as the demeanor or credibility of a witness, that could have been the basis for the granting of a new trial by the presiding trial judge.
 
 See Cascio,
 
 725 So.2d at 1194. In reviewing a successor judge’s ruling in such a situation, the appellate court engages in a review that is more in the nature of a de novo review.
 

 In this case, because of the particular credibility issues concerning defense counsel’s courtroom behavior — much of which was alleged to be nonverbal and, by its nature, not reflected in the transcribed record — the successor judge was not in a position to fairly rule on the merits of the motion for new trial.
 
 See generally Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.,
 
 576 F.Supp. 107, 125 (D.Del.1983) (discussing successor judge’s duty under Federal Rule of Civil Procedure 63 to grant new trial when credibility issues preclude him or her from adequately addressing the merits of the motion for new trial). In short, this ease is precisely the “extraordinary case” we referred to in
 
 Cascio,
 
 725 So.2d at 1191, where “the successor judge may ... grant a new trial on the ground that he cannot fairly rule upon the specific motion for new trial in light of particular credibility issues.”
 
 Id.
 
 at 1193-94. While the issue in
 
 Cascio
 
 involved the manifest weight of the evidence, we believe that the alleged improper conduct of trial counsel is an analogous issue of credibility. It appears that the successor judge in this case felt constrained to rule on the merits of the motion for new trial, even though a granting of the motion without consideration of the merits would have been consistent with this court’s holding in
 
 Cascio.
 
 The successor judge erred in not following his instincts and, instead, denying the motion for new trial. A new trial must be granted where, as here, defense counsel’s tactics prevented the presiding trial judge, who witnessed the inappropriate behavior, from considering and ruling on whether the totality of his behavior deprived the parties of a fair trial.
 

 Accordingly, we reverse the final judgment and remand for a new trial.
 

 DAVIS and KELLY, JJ„ Concur.
 

 [1]
 

 . We note that where a party has objected to errors at trial, it is not necessary for that party to move for a mistrial during the course of the trial in order to preserve the issue for purposes of a motion for new trial filed in the trial court.
 
 See City of Tampa v. Companioni,
 
 26 So.3d 598, 599 (Fla. 2d DCA 2009),
 
 review granted,
 
 23 So.3d 711 (Fla.2010);
 
 Robinson v. State,
 
 989 So.2d 747, 750 (Fla. 2d DCA 2008);
 
 Nigro v. Brady,
 
 731 So.2d 54, 56 (Fla. 4th DCA 1999).